BUTLER *v.* THE MUTUAL AID, LOAN AND INVESTMENT CO.

1. The bond sued upon being, as alleged by the defendant, the offspring of a more general contract, under which two loans, one for $1,200 and the other for $800, were to be made by the plaintiff to the defendant, which contract was performed by the plaintiff only to the extent of advancing $1,000, leaving $1,000 to be advanced at a specified time some months afterwards, and the bond in suit covering the loan of $1,000 having been executed with the express understanding and agreement that the second advance of $1,000 would be made as then and previously stipulated, the defendant could recoup in this action any damages which she sustained by a breach of the contract on the part of the plaintiff in refusing to make the second advance and withholding from her, or from those who were to receive it for her benefit, the money which should have been advanced according to the terms of the agreement, provided, on the state of facts which actually existed at the time the contract was made, or which were in contemplation of both parties as likely to exist afterwards and which did in fact come to pass, these damages were the natural and proximate consequences of the breach, and not so remote or uncertain as to be on that account excluded from consideration and computation according to legal rules. Certain of the defendant's pleas, with

the amendments thereto, indicate that there was material from which a proper plea of recoupment might be constructed, but the pleas, both before and after amendment, were too vague and indefinite as to this defence to withstand even a general demurrer.

2. The plaintiff, as indicated by the record, not being a building and loan association pure and simple, like the one involved in *Parker's* case, 46 *Ga.* 166, the object of which was to enable its members to acquire houses and homes by the payment of small sums monthly, but on the contrary being apparently a composite institution embracing for its objects insurance, loans and investments, the plea of usury should have been entertained for investigation and determination by the jury (under proper instructions from the court), as to whether the scheme of the institution as a whole embraced usurious measures and designs, and whether the loan to the defendant was infected with usury or not, and if so to what extent.

3. Under the terms of the bond sued upon, the plaintiff could recover all installments which matured up to the time of trial, although some of them had not become due when the action was brought, the same being embraced in the pleadings and the prayer for judgment; subject of course to any defence on account of usury or of damages which could be recouped.

4. Insurance, or expenditures for insurance, not alleged or claimed in the declaration, cannot be recovered in the action.

5. Under the act of July 22, 1891 (Acts 1890-1, vol. 1, p. 221), in reference to obligations for attorney's fees, construed according to the true intent of the legislature, one who in a bond, promissory note or other evidence of indebtedness contracts to pay such fees, and who, when sued upon the instrument containing the contract, files a plea in resistance to the action and insists upon the same, is liable for the payment of attorneys' fees if upon demurrer the plea is stricken.

6. The jurisdiction of the city court of Athens is broad enough to embrace any defences equitable in their nature which the superior court can entertain and administer as a court of law on a special plea setting forth the facts fully and distinctly. This does not include decreeing specific performance of contracts, rescission, or the like.                                                     *Judgment reversed.*

June 25, 1894. Argued at the last term.

Complaint on bond. Before Judge COBB. City court of Clarke county. June term, 1893.

Mrs. Butler, who held twenty shares of the ordinary stock in the plaintiff corporation, procured from it an advance or loan of $1,000 on June 18, 1892. She exe-

cuted her bond conditioned to be void should she pay to the company so long as it should continue to exist, or as provided in its constitution, by-laws, rules and regulations, $12 monthly as installments due on the stock and $10 monthly as interest and premiums on the advance, keep insured for $800 the building on the property conveyed to secure the repayment of the advance, for the benefit of the company, pay all taxes and assessments against the same at maturity, and comply with the requirements of the constitution, by-laws, rules and regulations; otherwise to be of full effect. She also executed her deed under the code, §§1969–1971, conveying certain realty to secure the repayment of the money loaned, reciting that the purpose of this conveyance was to invest the company with absolute title to the property conveyed, and to give it the right and power to sell the same according to the statute, on her failure to pay the installments, interest and premiums to the company, or to comply with the conditions of the bond, for the period of six months, and thereby secure to the company the repayment of said advances or of such sum as, under its charter, constitution, by-laws, rules and regulations, it would be entitled to recover by suit on the bond, as well as all costs, expenses, attorney's fees and commissions incurred by the company in enforcing its rights as vendee hereunder, just as if the same were mentioned in the bond, which attorney's fees, commissions, costs and expenses should be included in the judgment on the bond as a part of the same. She also executed a transfer of her stock to the company, as additional security for the loan. On February 10, 1893, the company brought suit against her, alleging that she had defaulted in the payment of the installments, interest and premiums for the last six months of 1892, whereby she was due the company, in addition to the $1,000 advanced, the sum of $144 as the total of the installments,

interest and premiums, and the fine of ten cents per share of her stock for each month of the default, according to the by-laws; that the monthly installments, interest, premiums and fine would be due by her to plaintiff for each succeeding month until judgment; and that she was entitled to a credit of $30 on the aggregate of amounts then due, as the amount paid by her into the loan fund of the company, and would be entitled to a credit of $10 per month on the amount then due and to become due as installments on the stock.

1. In addition to her sworn plea of not indebted, the defendant filed a number of special pleas which, as amended, were stricken on demurrer. Such of these pleas as are referred to by the first head-note set up, in substance, the following: In March, 1892, she applied to plaintiff for a loan of $2,000. It stated to her that if she would take 20 shares of its stock and give as security the property described in the declaration, it would loan her the $2,000, paying to her $1,200 in June, 1892, and $800 three months later. There were liens and other debts amounting to about $1,800 on the property, and plaintiff knew this fact, and that she desired the loan for the purpose of paying off the same. Upon the faith of the promise to make her the loan as stated, she took the 20 shares of stock and conveyed to plaintiff the property, which cost $2,750 and was worth more, plaintiff assessing its value at about $3,500. She had thereon insurance of $1,000, which was transferred to plaintiff, and it required additional insurance of $800, which was procured. When the loan came to be closed, plaintiff did not let her have $1,200, but only $1,000, stating to her that it would let her have the other $1,000 on October 1st. The $1,000 was not sufficient to pay off the liens on the place, and plaintiff's agents induced the holders thereof (naming them) to cancel the same, agreeing that they should be paid the other $1,000 which

was to be loaned on October 1st. At the time the first $1,000 was advanced, plaintiff agreed that the dues from then until October 1st should be deducted from the other $1,000 when paid over, as it had failed to loan her $1,200 as agreed. She was induced to sign the bond and deed by these promises, which were in writing; and said agreement was made in writing contemporaneously with the signing and giving of the bond and deed, and was the inducement to her to sign the bond and deed, and she would not have signed them except for said written promise of plaintiff. On October 1, 1892, it failed and refused to pay the balance of the money or any part thereof, whereby the liens on her property were not extinguished and are being sued; wherefore plaintiff has damaged her $2,000 by causing said unnecessary suits, attorney's fees and costs against her. It is endeavoring to avoid its contract, not in good faith, but simply because money has become tight and it does not desire to pay over the other $1,000 agreed to be loaned. She prays that plaintiff be decreed to specifically perform its contract and pay over the balance of the loan, $1,000, to be applied first to the extinguishment of any dues fairly chargeable to her (not including any fines, as the failure to pay was in no way her fault, but that of plaintiff), and the balance to the extinguishment of the liens on her property; and that she have judgment against plaintiff for all loss and damage caused to her by plaintiff's failure to comply with its contract. The promises before set forth were made by plaintiff both in writing and verbally, before, at the time, and after she signed the bond and deed, with the intention of inducing her to act and of deceiving and taking advantage of her, and did deceive her, and were a fraud on her. She had no notice or knowledge of plaintiff's by-laws or charter; it gave her no copy and no information thereof; nothing was said to her about them, nor has she ever seen a copy.

The property conveyed by her constituted her entire assets on which she could secure a loan.   Under no circumstances would she have so incumbered and transferred it but for said undertakings and promises.  Plaintiff's said conduct was false and fraudulent, and was pursued by it with the purpose to induce her to sign the bond, deed and transfer, whereby it secured a first lien on all her available assets, and deprived her of the power of meeting other pressing claims against her. She pleads failure of consideration by reason of the facts stated.   Contemporaneously with the execution and delivery of the bond, a written contract was entered into between the parties, whereby said liens on her property were to be cancelled; the $1,000 to be paid over at said time was to be prorated among all the liens, except the first lien which was to be paid in full; and plaintiff, in consideration of said release, the giving of said security and the execution of said papers, and in conformity to its agreement, was to pay over $1,000 additional on October 1, 1892, which sum would have more than paid all of defendant's indebtedness.  She was to, and did, transfer the bond for title from plaintiff, to the lien creditors as collateral security.   Said contract was drawn by Tuck at the instance of plaintiff.   Tuck was attorney of the lien creditors, was assisting defendant in the matter, and was representing plaintiff.   The agreement was signed by the lien creditors and delivered to Tuck as plaintiff's agent, and was afterwards turned over to and ratified by plaintiff.   Defendant had no notice that plaintiff would seek to repudiate this contract, until the time came for it to perform its part thereof, when it refused to do so, thus seeking an undue advantage and to defraud defendant and the lien creditors, to her great damage, whereby she will lose her stock and property and be left in debt, and whereby she has been forced to incur $500 for attorney's fees and court costs.   She was

not in default when suit was brought, nor before, because defendant had $1,000 of her money which it retained and promised to pay to her on October 1, 1892. It was plaintiff's right and duty to deduct from said fund any sum due it, and to pay over the balance and extinguish the liens on her property, as it had agreed; but it failed to do so. . She not being in default, the bond was not due, and the suit was prematurely brought.

The ground upon which the pleas to the foregoing effect were stricken was, that the contract sued on could not be varied by prior or contemporaneous promises or agreements.

2. To the plea of usury plaintiff demurred on the ground that defendant was a member of the company, participated in its profits and losses, and had no right to make the plea. The allegations of this plea were as follows: The debt and bond sued on are usurious, for plaintiff's method of operating and loaning was and is a mere device to conceal the taking of usurious interest on its loans. While it is called a mutual aid, loan and investment company, its chief object, as shown by its published statements and otherwise, is to collect a fund and loan it at " the highest rate of interest " and "at compound interest every month." It claims to loan money at 6 per cent. per annum, payable and collectible monthly; but under the name of premium, which is but another name for usury, collects another 6 per cent. monthly, by such device collecting really 12 per cent. interest per annum, payable monthly on loans; thus under fancy names, carefully eschewing the name of interest, which said charges really are, and with the object and intent to do so, contracting to take and collect a higher rate of interest than that allowed by law. It collects further sums under various names: for membership fee per share $1, inspection of property by company's agent $1, inspection of property by other agents

$10, company's attorney's fee $10 to $15, recording deeds, etc., $1.50.  All of these sums so retained by it out of said loans made under its plan of operations, are illegally retained, and such conduct and charges are a part of its scheme to evade usury laws and constitute a novel and shrewd device to conceal usury.  All of said charges have been deducted from said loan, and the same is therefore tainted with usury.  The loan is usurious for the further reason, that when plaintiff made the loan it was with the full knowledge that defendant was in debt, poor and hard pressed, that she owed $1,700 or $1,800 and desired to secure the loan of $2,000 to pay this indebtedness; and to enable her to pay plaintiff the legal dues and charges accruing to it.  It knew that the loan was not desired or intended for purchasing or building a home, but the transaction was, and was intended as, a loan pure and simple.  In order to procure the loan, defendant was induced and required to subscribe to the 20 shares of stock, and after subscribing was required to transfer the stock back to plaintiff and to give the bond and deed.  Nominally it paid over to her account $1,000, as stated in the bond and deed.  The bond was to be payable, $12 called premium, $12 called installments, thereafter on the —— day of each month for the full term of 83 months.  Out of said thousand dollars which plaintiff promised to pay to defendant, it deducted and retained, illegally and in violation of the usury law, the following sums for its own agents and benefit:  For H. A. B., for inspecting property $1.50, for inspecting fee $6, for recording deed to company $1.05, for fee for company's attorney $15 ; thus contracting for and taking sums of money on account of the loan,.and deducting from the sum loaned $23.55, to be used and appropriated by it, with intent to contract for and take, and taking, a greater rate of interest than allowed by law ; the interest charged in this indirect method being

at the rate of 18 per cent. per annum; and it is endeavoring to collect the same, to wit $144.00, when 8 per cent., the highest rate allowed (it claims to loan only at 6 per cent.), would be only $60. The usury is the difference in this rate, being $74.00, to which adding the $23.55 illegally retained, makes $97.55 of usurious interest charged, which it is trying to conceal. The principal object of plaintiff in making loans, and in making this loan, is to contract for, take and conceal usury, and by such methods it was enabled to make a gain of 42 per cent. on its ordinary, and 31 per cent. on its special stock. Wherefore the bond and deed, being tainted with usury and taken to secure the same, are illegal and void.—In this connection it may be stated, that it does not appear from the declaration that the plaintiff is a "building and loan association," its name being "The Mutual Aid, Loan and Investment Company, of Atlanta, Ga."

3. Plaintiff was allowed to prove the amount of installments, premiums and fines which accrued since the commencement of the action, with the view of recovering the same, over objection that they were not due when the action was begun and could not be recovered in this case.

4. Plaintiff further proved, that since the filing of the suit it had paid $8 fire insurance premium on the property conveyed by the deed, and asked to be allowed to recover therefor. Defendant objected on the grounds, that it was not due when the suit was brought and could not be recovered in this case, certainly not as it was not sued for in the declaration. The objection was overruled.

5. Plaintiff was allowed to prove that ten per cent. of the principal sum would be reasonable attorney's fees in the case. Defendant assigned this ruling as error, because the act prohibiting the recovery of attorney's fees unless a plea is filed and not sustained, contemplates

that there shall be a trial, evidence introduced under the pleas, and failure of such evidence to sustain the pleas to the satisfaction of the jury; and does not allow such fees to be recovered where pleas are filed and stricken on demurrer.

6. One of the grounds of demurrer to certain of the pleas was, that the city court of Clarke county had no jurisdiction in equity, the pleas seeking to obtain equitable relief.

LUMPKIN & BURNETT, for plaintiff in error.

F. A. QUILLIAN and R. S. HOWARD, contra.